PCM/TMS: USAO 2025R00683

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO. 1:26-mj-00045-CJC |
| | * | |
| AURELIO LUIS PEREZ-LUGONES, | * | |
| | * | |
| Defendant | * | |
| | * | |

******

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Keith Starr, being duly sworn, declare and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2021. I am currently assigned to the FBI Washington Field Office. I have spent most of my time as an FBI Special Agent working national security investigations, including the mishandling of classified information. I am assigned to the Counterintelligence Division at the FBI's Washington Field Office. I investigate, among other things, offenses involving the unauthorized disclosure of classified information to those not entitled to receive the same, including members of the media. I use a variety of techniques to conduct these investigations, including writing and executing search warrants, interviewing witnesses, victims, and subjects, and conducting arrests. In my current position, I am responsible for conducting and assisting in investigations into the activities of individuals whose conduct may constitute a threat to national security and/or a violation of federal law. As a result of my training, education, and experience, I am familiar with the manner in which criminal activity is carried out, and the efforts of persons involved in such activity to avoid detection by law enforcement. As a Special Agent of the FBI, I am authorized to investigate violation of laws of the United States, and execute warrants issued under the authority of the United States.

2. I make this affidavit in support of a criminal complaint charging that, on or about January 8, 2026, in the District of Maryland and elsewhere, the Defendant, **AURELIO LUIS PEREZ-LUGONES ("PEREZ-LUGONES")**, committed the offense of unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e).

3. Unless otherwise noted, the conclusions and beliefs expressed in this affidavit are based on my training, experience, and knowledge of the investigation, and reasonable inferences I have drawn from my training, experience, and knowledge of the investigation. The facts contained in this affidavit come from my review of the evidence, my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge. This affidavit is intended only to demonstrate that probable cause exists in support of the requested criminal complaint, and does not include all information known to me or to other law enforcement officers regarding this investigation.

## STATUTORY AUTHORITY AND DEFINITIONS

4. Under 18 U.S.C. § 793(e), "[w]hoever having unauthorized possession of, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or

willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it [commits a federal offense.]"

5. Under Executive Order 13526, the unauthorized disclosure of material classified at the "TOP SECRET" level ("TS"), by definition, "reasonably could be expected to cause exceptionally grave damage to the national security" of the United States. Exec Order 13526 § 1.2(a)(1), 75 Fed Reg. 707, 707-08 (Jan. 5, 2010). The unauthorized disclosure of information classified at the "SECRET" level ("S"), by definition, "reasonably could be expected to cause serious damage to the national security" of the United States. Exec. Order 13526 § 1.2(a)(2). The unauthorized disclosure of information classified at the "CONFIDENTIAL" level ("C"), by definition, "reasonably could be expected to cause damage to the national security" of the United States. Exec. Order 13526 1.2(a)(3).

6. Sensitive Compartmented Information ("SCI") is classified information related to intelligence sources, methods, and analytical processes. SCI is to be processed, stored, used, or discussed in an accredited Secured Compartmented information Facility ("SCIF"), and only individuals with the appropriate security clearance and additional SCI permissions are authorized to access such classified national security information. For a foreign government to receive access to classified information, the originating United States agency must determine that such release is appropriate.

7. Pursuant to Executive Order 13526, information classified at any level shall be lawfully accessed only by persons determined by an appropriate United States government official to be eligible for access to classified information, who has signed an approved non-disclosure agreement, who has received a security clearance, and who has a "need to know" the classified information. Classified information shall only be stored or discussed in an approved facility.

## **PROBABLE CAUSE**

### **PEREZ-LUGONES' U.S. Government Employment and Access to Classified Information**

8. **PEREZ-LUGONES** is a United States citizen born in Miami, Florida, and now lives in Laurel, Maryland. **PEREZ-LUGONES** was a member of the United States Navy from 1982 to 2002. From 1995 to 2002, as a member of the United States Navy, **PEREZ-LUGONES** held a Top Secret security clearance. **PEREZ-LUGONES** has been a Government contractor in various capacities since 2002.

9. Currently, **PEREZ-LUGONES** works as a systems engineer and information technology specialist for a Government contracting company whose primary customer is a Government agency. **PEREZ-LUGONES'** workplace is in Annapolis Junction, Maryland. **PEREZ-LUGONES'** workplace is owned and operated by another Government contracting company. **PEREZ-LUGONES'** role is administrative. **PEREZ-LUGONES** has access to classified systems so that he can maintain, support, and optimize various computer systems, networks, and software. **PEREZ-LUGONES** is a system administrator with heightened access to classified systems, networks, databases, and repositories as required for his job.

10. Due to his employment, **PEREZ-LUGONES** possesses a Top Secret security clearance with access to SCI.

11. **PEREZ-LUGONES** has had access to SCI since at least 2000. As a security clearance holder, **PEREZ-LUGONES** has received instruction on the proper handling of classified information, including the proper storage of classified information. As part of his employment, **PEREZ-LUGONES** was also required to take regular, annual training that included refresher training on the proper marking and handling of classified information.

12. In September 2025, **PEREZ-LUGONES** took and passed a web-based training on handling classified information and a web-based training on the unauthorized disclosure of classified information.

13. Because **PEREZ-LUGONES** held a security clearance in the United States Navy and as a Government contractor, the Government entrusted **PEREZ-LUGONES** with access to classified information and national defense information so long as he needed to know that information to perform his job.

14. Absent a work-related reason to access those systems, **PEREZ-LUGONES** is not authorized to access classified systems, networks, databases, or repositories, nor is he permitted to view or print the classified information from classified systems.

### PEREZ-LUGONES' Printing of Classified Materials

15. On several occasions since at least October 2025, while having authorized access to classified systems, **PEREZ-LUGONES** navigated to and searched databases or repositories containing classified information without authorization. There, **PEREZ-LUGONES** accessed and viewed classified intelligence reports or summaries of classified intelligence reports. Those reports or report summaries were produced, created, or maintained by several Government agencies.

16. On October 28, 2025, **PEREZ-LUGONES** used databases or repositories to search for, access, and view a classified intelligence report related to a foreign country ("Country 1"). That report was classified Top Secret. **PEREZ-LUGONES** took a screenshot of the report and pasted that screenshot in a Microsoft Word document titled "Microsoft Word – Document1."

17. Notably, **PEREZ-LUGONES**' screenshot of the report rendered one of the four bullet points at the end of the report illegible due to how the screenshot was cropped.

18. **PEREZ-LUGONES** also opened an attachment to that report, took screenshots of the attachment, and pasted those screenshots into the same Microsoft Word document.

5

19.    Afterward, **PEREZ-LUGONES** printed the Microsoft Word document hours before logging off the system for the day. The illegible bullet point referenced above is also illegible in the printed version of the Microsoft Word document.

20.    **PEREZ-LUGONES** had no need to know and was not authorized to search for, access, view, screenshot, or print any of this information.

21.    **PEREZ-LUGONES** should be aware, based on his training and experience as a security clearance holder, that he cannot remove classified information from a SCIF without authorization, proper packaging, and a government-issued courier card.

22.    **PEREZ-LUGONES** did not have authority to remove any classified or sensitive information. **PEREZ-LUGONES** did not receive specific requests to search for, access, view, screenshot, or print the classified or sensitive reports referenced above, nor did he have a need to conduct those searches.

23.    **PEREZ-LUGONES'** job duties do not include accessing, viewing, printing, or manipulating classified information or defense information of any kind related to Country 1. **PEREZ-LUGONES'** job duties are limited to administrative tasks, which were described above.

24.    Government security clearance holders are aware, often through mandatory in-person or web-based training, that Government classified systems are or can be monitored by the sponsoring agency, which can include monitoring printing activity.

25.    An individual may try to avoid creating an obvious record of printing activity (*e.g.*, avoid printing a document with classification markings in the file name, which would reflect that the document being printed is classified) by taking screenshots of classified information and printing those screenshots or pasting those screenshots in a text document. This type of activity

would obfuscate the title of the printed document, making it seemingly innocuous, but it would not necessarily obfuscate the content of the printed document.

26. **PEREZ-LUGONES'** employer can retrieve records of print activity on classified systems, including copies of printed documents.

27. **PEREZ-LUGONES** printed on classified systems during the times described above.

28. **PEREZ-LUGONES'** employer retrieved copies of the documents **PEREZ-LUGONES** printed on October 28, 2025.

29. As described above, a review of **PEREZ-LUGONES'** printing activity on that dates showed that he had printed innocuous sounding documents (i.e., Microsoft Word – Document 1) that really contained classified and sensitive reports.

## NOTETAKING

30. On January 5, 2026, **PEREZ-LUGONES** accessed and viewed a classified intelligence report related to Government operational activity. The report was classified up to Secret, and was maintained on databases or repositories.

31. On January 6, 2025, **PEREZ-LUGONES** left his residence for his workplace in his vehicle at about 8:00 a.m. He arrived at and entered the workplace at around 8:15 a.m. Shortly thereafter, **PEREZ-LUGONES** logged onto the classified system.

32. At around 4:00 p.m., **PEREZ-LUGONES** left the SCIF and then returned to the SCIF a short time later. At around 4:10 p.m., **PEREZ-LUGONES** picked up a yellow notepad, examined and removed approximately three pages, folded those pages in half, and set those pages on his desk. **PEREZ-LUGONES** then gathered his things, picked up the pages he had removed from the notepad, and left his desk area with the pages in hand. **PEREZ-LUGONES** left the

workplace at around 4:25 p.m., with a black bag. **PEREZ-LUGONES** was observed looking around the workplace parking garage before entering his vehicle and driving to his residence.



33. After leaving the workplace on January 6, 2026, **PEREZ-LUGONES** arrived at his residence at around 4:41 p.m. **PEREZ-LUGONES** did not leave his residence the rest of the night.

34. The following day, January 7, 2026, **PEREZ-LUGONES** left his residence for the workplace in his vehicle at around 8:00 a.m., arriving at around 8:11 a.m. Shortly thereafter, **PEREZ-LUGONES** logged on to the classified system.

35. At around 9:00 a.m., **PEREZ-LUGONES** took notes on a yellow notepad. Throughout the morning, **PEREZ-LUGONES** looked back and forth between the screen corresponding the classified system and the notepad, all the while writing on the notepad.

36. At around 10:52 a.m., on January 7, 2026, **PEREZ-LUGONES** left his desk with a yellow notepad page, leaving the workplace, getting into his vehicle, and driving to his residence.

### A Search of PEREZ-LUGONES' Car and Residence Revealed Documents Marked as Classified

37. On January 8, 2026, a federal court issued search warrants authorizing the search of **PEREZ-LUGONES**'s residence in Laurel, Maryland, as well as his vehicle, and other locations. The searches were conducted the same day.

38. While searching the authorized areas listed above, investigators located multiple documents that were marked as SECRET.

39. While searching **PEREZ-LUGONES**'s car, investigators located a lunch box in which a document was marked as SECRET. Prior video surveillance observed **PEREZ-LUGONES** at his cubicle in the SCIF at his workplace looking at this same document on January 8, 2026. Additional prior investigation of **PEREZ-LUGONES** in the SCIF at his workplace also identified him removing the classification header/footer markings from this document prior to leaving his workplace. The document identified in the lunch box by investigators during the authorized search of **PEREZ-LUGONES**'s car was the same classified document without the classification header/footer markings that **PEREZ-LUGONES** was seen handling in the SCIF at his workplace.

40. While searching **PEREZ-LUGONES**'s residence, investigators located a document in the basement of the residence marked as SECRET.

41. One or more of these documents are related to national defense.

### CONCLUSION

42. I submit that this affidavit establishes probable cause in support of a criminal complaint charging **PEREZ-LUGONES** with the unlawful retention of national defense

information, in violation of 18 U.S.C. § 793(e), and thus respectfully request that the Court issue a complaint charging **PEREZ-LUGONES** with that offense.

Respectfully submitted,

_____
Keith Starr
Special Agent
Federal Bureau of Investigation

Affidavit submitted by e-mail and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 9th day of January, 2026.

_____
HONORABLE CHELSEA J. CRAWFORD
UNITED STATES MAGISTRATE JUDGE