IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| United States of America | : | |
| --- | --- | --- |
| | : | |
| v. | : | Case No. 1:26-mj-45-CJC |
| | : | |
| Aurelio Luis Perez-Lugones | : | |
| Defendant | : | |

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This case does not fall within one of those carefully limited exceptions. Aurelio Perez-Lugones is a 61-year-old veteran of the United States Navy with no criminal history – not even a traffic infraction. He is a husband and a father who's lived in Maryland with his family for more than three decades. And before settling in Maryland, he gave twenty years of his life serving in the United States military. The Bail Reform Act mandates his release from custody pending trial in this case.

Mr. Perez-Lugones' pretrial release is warranted for three reasons:

*First,* the Government is not entitled to seek detention in this case. Mr. Perez-Lugones is not charged with an offense covered by Section 3142(f)(1) of the Bail Reform Act, and the Government cannot meet its burden of proving that this case involves a "serious risk that [Mr. Perez-Lugones] will flee" or a "serious risk that [Mr. Perez-Lugones] will obstruct or attempt to obstruct justice." 18 U.S.C. § 3142(f)(2)(A), (B).

1

***Second,*** even if the Government can meet its burden of proof on the threshold question, under the circumstances of this case, the Bail Reform Act does not permit Mr. Perez-Lugones' detention based solely on risk of danger.

***Third,*** even if the Bail Reform Act allows the Court to detain someone based solely on risk of danger in a case such as this, the Government cannot meet its burden of proving by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community if Mr. Perez-Lugones is released.

For these reasons, the Court should release Mr. Perez-Lugones pending trial.

## Background

On January 9, 2026, the Government filed a Criminal Complaint charging Mr. Perez-Lugones with unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e).[1] That same day, Mr. Perez-Lugones appeared before the Honorable Chelsea J. Crawford for an initial appearance.[2] At the hearing, the Government contended that a detention hearing was authorized in this case pursuant to Section 3142(f)(2)(A) and (B) of the Bail Reform Act. Judge Crawford rejected the Government's claim that Mr. Perez-Lugones presents a serious risk of flight but found that the Government had satisfied its threshold burden to seek detention under Section 3142(f)(2)(B), which concerns a "serious risk that such person will obstruct or attempt to obstruct justice." 18 U.S.C. § 3142(f)(2)(B). Judge

---

[1] ECF No. 1 (Criminal Complaint).
[2] ECF No. 4 (Initial Appearance).

2

Crawford issued a temporary detention order pending Mr. Perez-Lugones' detention hearing.[3]

On January 12, 2026, Mr. Perez-Lugones appeared before the Honorable Charles D. Austin for a detention hearing.[4] At the hearing, the Government advanced only one substantive basis for its detention request, claiming that Mr. Perez-Lugones should be detained because he poses a risk of danger to the community. After carefully considering the parties' arguments, Judge Austin found that the Government had failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community and issued a release order.[5] Judge Austin then issued a stay of that release order to permit the Government an opportunity to seek review.

The Government filed a motion seeking review of Judge Austin's release order.[6] As it did before Judge Austin, the Government argues that Mr. Perez-Lugones should be detained on the basis of community safety.[7] The Court should deny the Government's request for Mr. Perez-Lugones' pretrial detention for three reasons:

---

[3] ECF No. 8 (Order of Temporary Detention Pending Hearing Pursuant to Bail Reform Act).
[4] ECF No. 11 (Detention Hearing). Counsel for Mr. Perez-Lugones has provided Chambers with a copy of the audio recording of that hearing.
[5] ECF No. 12 (Release Order).
[6] ECF No. 15 (Motion for Release of Release Order).
[7] *Id.* at ¶ 5 (stating that Mr. Perez-Lugones "poses a danger to the community.")

***First***, the Government is not entitled to seek detention in this case. Mr. Perez-Lugones is not charged with an offense covered by Section 3142(f)(1) of the Bail Reform Act, and the Government cannot meet its burden of proving that this case involves a "serious risk that [Mr. Perez-Lugones] will flee" or a "serious risk that [Mr. Perez-Lugones] will obstruct or attempt to obstruct justice." 18 U.S.C. § 3142(f)(2)(A), (B). Because the Bail Reform Act does not permit the Government to seek Mr. Perez-Lugones' detention, the Court must order his release from custody.

***Second***, even if the Government can meet its burden of proving that it is entitled to seek detention (which it cannot do), under the circumstances of this case, the Bail Reform Act does not permit Mr. Perez-Lugones' detention based solely on risk of danger. More specifically, the Bail Reform Act "as intended by Congress and interpreted by the Supreme Court, allows dangerousness to justify detention only for those individuals who fall within the carefully delineated categories set forth in § 3142(f)(1), rather than those who pose a risk of flight or risk of obstruction of justice under (f)(2)." *United States v. DeBeirt*, 16 F.Supp.2d 592, 594 (D. Md. 1998); *see also United States v. Giordano*, 370 F.Supp.2d 1256, 1261 (S.D. Fl. 2005) ("Circuit Court opinions considering this issue under section 3142(f) have all ruled that the 'dangerousness' prong for pretrial detention under section 3142(e) *only* applies to cases that arise under section 3142(f)(1)") (emphasis in original) (citing cases). Because this case does not involve an offense covered by Section 3142(f)(1), the Bail Reform Act does not permit Mr. Perez-Lugones' pretrial detention based on risk of danger alone.

4

***Third***, even if the Bail Reform Act allows the Court to detain a defendant based solely on risk of danger in a case such as this, the Government cannot meet its burden of proving by clear and convincing evidence that any potential risk of danger presented by Mr. Perez-Lugones' release cannot be reasonably mitigated with appropriate conditions of release. Accordingly, the Court should affirm Judge Austin's release order.

**Legal Standard**

The Government may file a motion for revocation of a release order issued by a magistrate judge. *See* 18 U.S.C. § 3145(a)(1). The district court reviews the magistrate judge's decision *de novo* and makes "an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 Fed.Appx. 46, 48 (4th Cir. 2001) (unpublished); *see also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).

**Argument**

**I.     The Government Cannot Seek Detention in this Case.**

The Bail Reform Act permits the Court to hold a detention hearing only in carefully limited circumstances. This is not one of them. Ordinarily, a defendant should be released pending trial. The Supreme Court of the United States has underscored this principle by advising that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act requires the release of a person facing trial under the least restrictive condition or combination

of conditions that will reasonably assure their appearance in court and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B). The statute requires "reasonable assurance," not a "guarantee." *United States v. Shaheed*, 455 F.Supp. 32 225, 263 (D. Md. 2020) (quoting *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985)). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *see also United States v. Berrios-Berrios*, 791 F.2d 146, 249 (2d Cir. 1986) (noting that the Bail Reform Act codified the "traditional presumption favoring pretrial release for the majority of Federal defendants.") (quotations omitted).

Consistent with the spirit and framework of the Bail Reform Act, the statute sets forth a preliminary, threshold question: is a detention hearing even warranted? *See Salerno*, 481 U.S. at 747 ("The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." (citing 18 U.S.C. § 3142(f)). On this threshold issue, the Bail Reform Act identifies three circumstances wherein a court "'is authorized to conduct a detention hearing (i.e., to consider whether to detain [a] Defendant.'" *United States v. Hernandez Cerrato*, 2024 WL 1329296, at *1 (D. Md. March 28, 2024) (quoting *United States v. Mendoza-Belleza*, 420 F.Supp.3d 716, 716 (E.D. Tenn. 2019)). Under Section 3142(f), a federal court is authorized to conduct a detention hearing if:

1. The offense charged is one enumerated in § 3142(f)(1);
2. There is a "serious risk that such person will flee;" or

6

3. There is a "serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective juror."

*Mejias-Mejias*, 771 F.Supp.3d at 690.

Mr. Perez-Lugones is charged with unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e). Congress did not include this offense in the list of enumerated offenses under Section 3142(f)(1). Thus, the threshold question is whether the Government can satisfy its burden of proving that this case involves a "serious risk" that Mr. Perez-Lugones will flee, or a "serious risk" that he will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate, a prospective witness or juror. 18 U.S.C. § 3142(f)(2)(A) and (B).

### A. *This case does not involve a "serious risk" that Mr. Perez-Lugones will flee.*

While Section 3142(f)(2) does not spell out the standard of proof for "serious risk of flight," the statute's history and subsequent case law make clear that the showing required is a substantial one. A "serious risk" that a person will flee requires the Government to show a "serious risk that the defendant intentionally will avoid court proceedings." *Hernandez Cerrato*, 2024 WL 1329296 at *2 (quoting *United States v. White*, No. 3:21-MJ-0407, 20221 WL 2155441 at *10 (M.D. Tenn. May 27, 2021)); *see also United States v. Kilmar Armando Abrego Garcia*, 787 F.Supp.3d 830, 853-54 (M.D. Tenn. June 22, 2025) (agreeing with this definition of "serious risk of flight").

7

To be clear, this standard is distinct from – and more demanding than – that of risk of nonappearance under Section 3142(g). *See United States v. Rodriguez-Fuentes*, 2025 WL 711955, at *3 (E.D. Ky. Mar. 5, 2025) (collecting authority, including from this district, agreeing that "'serious risk of flight' [differs] from the broader concept of 'risk of nonappearance'"). As noted by Judge Austin:

> Congress's deliberate use of the adjective "serious" to modify "risk of flight" further heightens the threshold, as "serious is commonly understood to mean "weighty; important; …[or] potentially resulting in death or other severe consequences." Thus, a plain reading of § 3142(f)(2)(A) indicates that demonstrating a "serious risk" of flight requires more than speculation, negligence, or logistical challenges. If "serious" is understood to modify "risk," then a "serious risk that [a defendant] will flee" must entail more than mere uncertainty or the possibility of nonappearance. Instead, *it demands a substantial showing that the defendant will take deliberate, voluntary action to flee to evade judicial oversight.*

*Mejias-Mejias*, 771 F.Supp.3d at 691 (quoting *United States v. Rodriguez-Fuentes*, 2025 WL 711955, at *2 (E.D. Ky. Mar. 5, 2025 (citations omitted) (alteration in original) (emphasis added)).

Thus, to establish a "serious risk of flight" to trigger a detention hearing, "the government must show *flight* rather than mere nonappearance in court, as well as that the risk not only exists but is a *serious* one." *Mejias-Mejias*, 771 F.Supp.3d at 691 (emphasis in original). In considering whether a "serious risk of flight" has been established, courts consider the defendant's incentive to flee, ability to flee, prior noncompliance with court orders, ties to the jurisdiction, and other matters that bear upon the question of flight. *Id.*

This case does not involve a serious risk that Mr. Perez-Lugones will take deliberate, voluntary action to flee and evade judicial oversight. As noted in the

8

pretrial services report, Mr. Perez-Lugones has strong family and community ties, no prior criminal history, no prior failures to appear for court hearings, no prior instances of failing to comply with court orders, no incentive to flee, and no realistic ability to flee. Because the Government cannot show that this case involves a "serious risk" that Mr. Perez-Lugones will flee, a detention hearing is not authorized under Section 3142(f)(2)(A).

### B. *This case does not involve a "serious risk" that Mr. Perez-Lugones will obstruct justice.*

This case also does not involve a "serious risk" that Mr. Perez-Lugones will obstruct justice. When assessing the existence of a serious risk of obstruction of justice, "[t]he question is not simply whether [a defendant's] actions can be considered obstruction, but whether there is a *serious* risk of obstruction *in the future*." *United States v. Madoff*, 586 F.Supp.2d 240, 250 (S.D.N.Y. 2009) (emphasis added). "To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist *going forward*." *Id.* (emphasis added). Thus, to seek detention under Section 3142(f)(2)(B), the Government must demonstrate a "serious risk" that Mr. Perez-Lugones will obstruct justice *in the future*. It is not enough to allege that Mr. Perez-Lugones has previously engaged in conduct that could be characterized as furtive or secretive, or that his alleged conduct evinced efforts to avoid detection. Moreover, a non-zero risk, or even a moderate risk, of obstruction in the future is not sufficient. The risk must be substantial.

9

Because the Government cannot meet its burden of proving that Mr. Perez-Lugones presents a serious risk of obstructing justice in the future, a detention hearing is not authorized under Section 3142(f)(2)(B).

## II. Risk of Danger, Alone, is Insufficient to Detain Mr. Perez-Lugones.

Even if the Government can meet its burden of proving that it is entitled to seek detention (and here, it cannot), when a detention hearing is authorized under Section 3142(f)(2), the Bail Reform Act forbids pretrial detention based solely on risk of danger. "It is uniformly accepted, based upon these provisions of the statue and the relevant legislative history, there are only six instances that permit a court to convene a detention hearing:

1. Cases involving crimes of violence;
2. Cases involving a maximum penalty of life imprisonment or death;
3. Cases involving serious drug offenses (those involving maximum sentences of ten years or more);
4. Cases involving recidivist offenders (those with two or more relevant felonies); a
5. Cases involving a serious risk of flight; or
6. Cases involving a serious risk that a defendant will obstruct justice."

*Giordano*, 370 F.Supp.2d at 1260 (collecting cases). The legislative history of the Bail Reform Act demonstrates that these discrete predicate categories "'in effect serve to limit the types of cases in which detention may be ordered prior to trial.'" *Id.* (quoting S. Rep. No. 98-225, at 20, reprinted in 1984 U.S. Code & Admin. News

10

3182, 3203); *see also United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) ("The legislative history of the [Act] makes clear that to minimize the possibility of a constitutional challenge, the drafters aimed toward a narrowly drafted statute…addressed to the danger from a 'small but identifiable group of particularly dangerous defendants.'") (quoting S. Rep. No, 98-225, at 6-7, 1984 U.S. Code & Admin. News at 3189).

The categories of offenses listed in Section 3142(f)(1) not only trigger a detention hearing, but, in many instances, also a rebuttable presumption of detention. *See* 18 U.S.C. § 3142(e)(3). Mr. Perez-Lugones is not charged with one of those offenses. Thus, the Bail Reform Act presumes that he should be released from custody pending trial. *See* 18 U.S.C. § 3142(a)-(c).

The remaining two categories – serious risk of flight or obstruction of justice – are prescribed by Section 3142(f)(2). However, where a detention hearing is triggered by Section 3142(f)(2)(A) or (B), the Bail Reform Act does not permit a court to detain an individual based on risk of danger alone. "Circuit Court opinions considering this issue under section 3142(f) have all ruled that the 'dangerousness' prong for pretrial detention under section 3142(e) only applies to cases that arise under section 3142(f)(1)." *Giordano*, 371 F.Supp.23 at 1261; *see also United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ("In essence, we interpret the statute in the same manner as has the Third Circuit. That is, where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)."); *DeBeir*, 16 F.Supp.2d at 594 (holding that

11

"it is clear that the Act, as intended by Congress and interpreted by the Supreme Court, allows dangerousness to justify detention only for those individuals who fall within the carefully delineated categories set forth in § 3142(f)(1), rather than those who pose a risk of flight or risk of obstruction of justice under (f)(2)").

In this case, the Government is entitled to a detention hearing only if it first overcomes its burden of proving that this case falls within one of the two categories prescribed in Section 3142(f)(2) – that is, a case that involves a serious risk that Mr. Perez-Lugones will flee or obstruct justice. Even if that burden is met, however, the Government has identified only one ground in support of its request for Mr. Perez-Lugones' pretrial detention: claimed risk of danger. Because the Bail Reform Act does not permit detention based solely on risk of danger in these circumstances, the Court must release Mr. Perez-Lugones pending trial.

### III. The Court Can Reasonably Assure the Safety of the Community with Release Conditions.

Even if the Court determines that the Bail Reform Act allows the Government to seek detention based on risk of danger alone (it does not), the question remains whether Government can meet its burden of proving by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community. It cannot meet that burden for two primary reasons.

***First***, Mr. Perez-Lugones will have no access to any sensitive or classified information while on pretrial release. As noted in the complaint, Sensitive

Compartmented Information[8] ("SCI") is processed, stored, used, or discussed in an accredited Secured Compartmented Information Facility ("SCIF"). Complaint at ¶ 6. And "only individuals with the appropriate security clearance and additional SCI permissions are authorized to access such classified national security information." *Id*.

The allegations in the complaint are based on Mr. Perez-Lugones' access to systems and documents maintained at a SCIF. *See, e.g.,* Complaint at ¶¶ 15-19, 30-32. While the complaint alleges that Mr. Perez-Lugones once had lawful access to SCI by way of his previous employer, as the Government acknowledged to Judge Austin during the detention hearing, Mr. Perez-Lugones is no longer employed and therefore lacks access to any SCI or SCIF.

***Second***, the Government's concern about information that may exist in Mr. Perez-Lugones's mind is wholly unsubstantiated in this case. The Government's accusations against Mr. Perez-Lugones concern alleged retention and misuse of classified *documents*, not information. Indeed, there are no allegations that Mr. Perez-Lugones—during his decades-long career in positions requiring a security clearance—has ever inappropriately used information that he had knowledge of.[9] On this point, Judge Austin noted, "I don't find that the evidence is clear and convincing of future danger… I don't have any indication of some misuse, whether

---

[8] The complaint defines Secured Compartmented Information as "classified information related to intelligence sources, methods, and analytical processes." Complaint at ¶ 6.
[9] The Government has not identified any specific information that Mr. Perez-Lugones may have knowledge of, and that he might misuse if released.

13

it's retention or other use, of information outside of the documents that may have been copied late last year. To the extent that Mr. Perez knows anything in his mind and has retained those things, those things don't appear to be the basis of the government's allegations, at least at this time. In the future that could change. But the record before me now involves documents and systems that he no longer has access to."[10]

Judge Austin later reiterated that, "Part of my finding of release is that I am not convinced of his misuse of information, or alleged misuse of information, or imminent misuse of information, other than documents and systems to which he no longer has access. There's a limit on his personal access. And, again, the government executed a search warrant. And so, the facts presented to me suggest that any criminal activity and any threats to safety have come from information… that's not stored in his head, that's information that's set forth in documents."[11]

Citing several cases, the Government argues that courts "have recognized this knowledge as dangerous to the community." Government's Motion to Review Release Order at ¶ 6. But the Government conveniently omits the aggravating facts and circumstances surrounding the defendants' conduct in those cases, which substantiated the courts' concerns and justified pretrial detention. *See, e.g., United*

---

[10] *United States v. Aurelio Perez-Lugones*, No. 1:26-MJ-45-CJC (Detention Hearing Audio) 3:43:11 – 3:43:51. This transcript is based on defense counsel's review of the audio recording and attempt to transcribe it. If there are discrepancies between this transcript and the audio recording, the audio recording captures the words actually spoken.
[11] *Id*. at 3:51:22 – 3:52:14.

14

*States v. Wenheng Zhao*, C.D. Cal. Case No. 2:23-CR-372-RGK (detaining the defendant, who was charged with conspiracy under 18 U.S.C. § 371 and receiving a bribe by a public official under 18 U.S.C. § 201(b)(2)(C), where he shared information to a foreign intelligence agent for over 20 months in exchange for $14,000 because he believed it was "easy money," and evidence showed that the defendant searched for one-way flights to Taiwan shortly before his arrest and hid $20,000 in cash in a grocery bag in his car.); *United States v. Mallory*, 286 F.Supp.3d 854 (E.D. Va. 2017) (detaining a defendant who was charged with espionage under 18 U.S.C. § 794 – an offense that triggers a detention hearing under § 3142(f)(1) because it carries a maximum sentence of life and, under certain circumstances, death – where he travelled to China twice to meet with Chinese intelligence operatives, provided defense information in exchange for money, and possessed documents that included "granular details on how a specific form of intelligence collection can be used to support clandestine operations," which, if disclosed "could reasonably be expected to cause the loss of critical intelligence and possibly result in the lengthy incarceration or death of clandestine human sources."); *United States v. Madrigal*, 2023 WL 2823504 (W.D. Va. 2023) (detaining a defendant – who was charged with willfully injuring or committing any depredation against any property of the United States, multiple counts of making a false statement or representation to a department or agency of the United States, tampering with a witness, victim, or information by intimidation, threats, corrupt persuasion, or misleading conduct, attempted witness tampering, and cyberstalking

– where he had "consistently and over a period of years made numerous death threats to Victims 1 and 2 and their friends and families – showing extreme seriousness of the danger to multiple persons and the community if he were released," and the defendant "has also taken steps to act on such threats").

It is not enough for the Government to simply allege that a defendant may have knowledge of classified information and is therefore hypothetically capable of disseminating it. If that that was enough to detain an individual, it would result in the categorical denial of pretrial release for all individuals charged under 18 U.S.C. § 793(e). Not only is the Government's position speculative and conclusory, adopting it would rewrite the Bail Reform Act to provide for a categorical denial of release— a proposition that flies in the face of the plain text and overarching objectives of the statute.

For these reasons, along with those that will be presented at the hearing, the Government cannot meet its burden of proving by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.

## Conclusion

For the reasons provided above, the Court should release Mr. Perez-Lugones pending trial in this case.

                                                  Respectfully submitted,
                                                  James Wyda
                                                  Federal Public Defender
                                                    for the District of Maryland

                                              ___/s/_____
                                              Francisco A. Carriedo (#816158)
                                              Courtney D. Francik (#812100)
                                              Assistant Federal Public Defenders
                                              100 South Charles Street
                                              Tower II, 9th Floor
                                              Baltimore, Maryland  21201
                                              Phone: (410) 962-3962
                                              Fax:  (410) 962-0872
                                              Email: Francisco_Carriedo@fd.org
                                                      Courtney_Francik@fd.org

## CERTIFICATE OF SERVICE

      I hereby certify that on January 15, 2026, a copy of the foregoing was served via CM/ECF to the Government.

                                                                  _____/s/_____
                                                                  Francisco A. Carriedo